IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KIM F. HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:22-cv-00341 (RDA/JFA) |
| ) | |
| TRUIST BANK & ) | |
| MICHAEL R. COGAN, P.C., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Truist Bank f/k/a SunTrust Bank and Michael R. Cogan, P.C.'s (collectively "Defendants") Motion to Dismiss. Dkt. 5. Plaintiff Kim F. Henderson ("Plaintiff"), who is proceeding *pro se*, has been afforded the opportunity to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) and has responded. The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendants' Memorandum in Support, Dkt. 5-1; Plaintiff's Responses, Dkt. Nos. 7, 9; and Defendants' Reply, Dkt. 10; it is hereby ORDERED that Defendants' Motion to Dismiss is GRANTED for the reasons stated in this Court's opinion.

1

I.  BACKGROUND

A.  Factual Background[1]

In 2017, Plaintiff received an adverse judgment in favor of Truist Bank's ("Truist") predecessor, SunTrust Bank, for Plaintiff's failure to make debt payments. Dkt. 1-1 ¶ 1. The judgment awarded SunTrust Bank $690,497.75, plus attorneys' fees of $103,574.66 and costs of $358.00. *Id.*.  The judgment resulted in a lien levied on Plaintiff's current home. *Id.* ¶¶ 10-11. $153,754.13 from a foreclosure sale of Plaintiff's former residence was awarded to SunTrust Bank in partial satisfaction of the judgment. *Id.* ¶ 2.

Plaintiff owed SunTrust Bank's successor, Truist, a principal balance of $536,743.62 and a total of $640,676.28 when including attorneys' fees and costs. He owned his home subject to a judgment lien in security of this debt. Michael R. Cogan, P.C. ("Cogan")[2] served as Truist's counsel and the point of contact between Truist and Plaintiff. *Id.* ¶¶ 10-11.

In 2020, Truist issued Plaintiff an IRS Form 1099-C, discharging Plaintiff's debt in the amount of $536,743.62, pursuant to an event code "G." *Id.* ¶¶ 3, 37. Event code "G" corresponded to Truist's "decision or . . . policy . . . to discontinue collection[.]" *Id.* ¶ 37. Form 1099-C directed Plaintiff to contact his creditors if he disagreed with the amount on the form. *Id.* ¶ 5. Plaintiff "agreed" with the information on the form. *Id.* ¶ 24.

In December 2021, Plaintiff, believing his debt to be cancelled, entered a contract to sell his home for $640,000.00. *Id.* ¶ 7. But the judgement lien on his home prevented Plaintiff from completing the sale. *Id.* ¶ 11. RGS Title LLC, on behalf of Plaintiff, emailed Cogan to request

---

[1] For purposes of considering the Motion, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] All references to Cogan are to the law firm and not the individual lawyer associated with this matter.

the status of the judgment and a release of the lien. *Id.* ¶¶ 9-10. In January 2022, Plaintiff emailed Cogan to ask if the judgment would be released. *Id.* ¶ 11. Cogan replied that Truist "is in the process of issuing a corrected 1099 for 2020 which will reverse the forgiven debt." *Id.* ¶ 12.

Through Cogan, Truist then issued Plaintiff a second Form 1099-C with the same date as the first (December 18, 2020), but with a discharge amount of $0.00. *Id.* ¶¶ 12, 13, 18. Plaintiff replied that he did not agree with the corrected form. *Id.* ¶ 14. Cogan provided Plaintiff with a payoff statement indicating a balance of $640,676.28. *Id.* ¶¶ 9, 19. Shortly thereafter, Plaintiff terminated the sale of his home. *Id.* ¶ 33. In February 2022, Plaintiff filed suit claiming breach of contract, bad faith, and fraud. *Id.* at 2. Plaintiff has prayed for $640,000.00 in damages and did not request a jury trial. Dkt. 1-3.

B. Procedural Background

On March 7, 2022, Plaintiff filed a *pro se* Complaint against Defendants in the Circuit Court of Fairfax County, alleging breach of contract, bad faith, and fraud. Dkt. 1-1 at 2. Defendants filed a Notice of Removal on March 28, 2022. Dkt. 1. Defendants moved to dismiss Plaintiff's Complaint for failure to state a claim on April 8, 2022. Dkt. 5; Dkt. 5-1 at 2-4. Counsel for Defendants advised Plaintiff of his rights in accordance with Local Civil Rule 7(K) and *Roseboro*. Dkt. 5. Plaintiff opposed both removal of the action and Defendants' Motion to Dismiss on April 14, 2022. Dkt. 7. Plaintiff also responded to Defendants' Memorandum in support of the Motion to Dismiss on April 20, 2022. Dkt. 9. Defendants filed their replies on April 20, 2022. Dkt. Nos. 10, 11.

II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is

3

appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of [his] claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes his filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014). That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into his advocate. *Green v. Sessions*, No. 1:17-cv-1365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

III.  ANALYSIS

A.  Notice of Removal

Plaintiff challenges removal of this action.  Dkt. 7.  While the precise legal grounds for Plaintiff's challenge are unclear, Plaintiff notes that: (1) Defendants filed a Notice of Removal before proper service of the original complaint, and (2) Truist had over 260 branch locations in Virginia.  Dkt. 7 at 2-3.

28 U.S.C. § 1446 controls the proper procedures for removal: "The notice of removal of a civil action . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  Plaintiff filed his Complaint on March 7, 2022; Defendants accepted service on March 18, 2022; and Defendants filed the Notice of Removal on March 28, 2022.  Dkt. 11 at 3.  Plaintiff did not properly serve either of the Defendants until March 28, 2022.[3]  Dkt. 7-1 at 2-3.  Regardless of when proper service was effected, Defendants (1) received a copy of the pleading prior to removal, and (2) filed the Notice of Removal within 30 days of both their receipt of the pleading and Plaintiff's filing in the Circuit Court of Fairfax County.  Thus, Defendants "filed [Notice of Removal] within 30 days after the receipt . . . , through service *or otherwise*, of a copy of the initial pleading . . . ."  28 U.S.C. §1446 (emphasis added).  Accordingly, Defendants properly filed the Notice of Removal.

Regarding Truist's branch locations in Virginia, Plaintiff appears to challenge Defendants' invocation of this Court's diversity jurisdiction.  Plaintiff does not dispute that Plaintiff is a citizen

---

[3] Documentation of summons service executed is absent from the court filings.  While the Court located evidence of proper service after culling Plaintiff's voluminous exhibits, as a matter proper legal practice before this Court, the parties should demonstrate, with evidence, that the requisite procedural requirements have been met before asking to be heard.

of Virginia, Cogan is a citizen of Maryland, and the amount in controversy exceeds $75,000. Plaintiff only points to Truist's business presence in Virginia to challenge removal. Dkt. 7 at 2-3.

Plaintiff's challenge fails because Truist is a citizen of North Carolina, for diversity jurisdiction purposes. Despite its branch locations in Virginia, Truist "is not deemed a citizen of every State in which it conducts business or is otherwise amenable to personal jurisdiction." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). Rather, Truist's "citizenship derives, for diversity jurisdiction purposes, from its State of incorporation and principal place of business." *Id.* (citing 28 U.S.C. § 1332(c)(1)). Defendants state—and Plaintiff does not challenge—that Truist's state of incorporation and principal place of business are both North Carolina. Dkt. 1 ¶ 9. Thus, Truist is a citizen of North Carolina, and diversity is complete.

B. Defendants' Motion to Dismiss

Plaintiff alleges Truist's issuance of Form 1099-C required Truist to forgive Plaintiff's debt. Plaintiff claims Truist's failure to forgive Plaintiff's debt and release the associated lien on his home constituted breach of contract, bad faith, and fraud. Defendants argue their issuance of Form 1099-C did not forgive Plaintiff's debt and move to dismiss Plaintiff's claims. Defendants take the position that Form 1099-C does not evidence cancellation of debt and Plaintiff does not sufficiently plead facts to support his three claims.

A. Legal Effect of Debt Discharged on Form 1099-C

To address Plaintiff's claims, this Court must first determine what obligations accrue to a creditor upon issuance of Form 1099-C. In this case, Truist's issuance did not indicate that it had canceled Plaintiff's debt.

The Internal Revenue Code requires creditors to file a Form 1099-C when they have discharged a person's debt of at least $600.00 in the calendar year. 26 C.F.R. § 1.6050P–1(a). For Form 1099-C reporting requirements, an *actual* discharge of debt is distinct from a debt discharge

6

in general, such that an actual discharge is not required to have occurred in order for a creditor to be obligated to file with the IRS. *See FDIC v. Cashion*, 720 F.3d 169, 178-79 (4th Cir. 2013) (citing 26 C.F.R. § 1.6050P–1). This distinction stems from the requirement that "a discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, *whether or not an actual discharge of indebtedness has occurred* on or before the date on which the identifiable event has occurred." 26 C.F.R. § 1.6050P–1(a) (emphasis added).

The Fourth Circuit does not view a Form 1099-C on its own as sufficient evidence of an actual discharge of debt. *Cashion*, 720 F.3d at 178-79 (citing 26 C.F.R. § 1.6050P–1). In *Cashion*, the Fourth Circuit referenced the "plain language" of 26 U.S.C. § 6050P to conclude "filing a Form 1099-C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt[.]" *Id.*

Despite the majority view articulated in *Cashion*, a minority of courts deem Form 1099-C *prima facie* evidence of intent to discharge a loan. *Cashion*, 720 F.3d at 178 (citing *In re Welsh*, No. 06–10831ELF, 2006 WL 3859233 (Bankr. E.D. Pa. Oct. 27, 2006); *Amtrust Bank v. Fossett*, 223 Ariz. App. 438, 439-41 (2009); *Franklin Credit Mgmt. Corp. v. Nicholas*, 73 Conn. App. 830, 838-43 (2002)). The primary rationale for this view is that Form 1099-C can trigger income tax liability for a debtor. *See, e.g., In re Reed*, 492 B.R. 261, 271-72 (Bankr. E.D. Tenn. 2013) ("It is inequitable to require a debtor to claim cancellation of debt income . . . while still allowing the creditor . . . to . . . collect . . . ."). The debtor either pays tax on the discharged debt or opts not to pay tax, on a theory that an actual discharge has not occurred, and risks penalties and fines if the IRS finds payments deficient. *Id.* (quoting *In re Crosby*, 261 B.R. 470, 474 (Bankr. D. Kan. 2001)). The creditor, on the other hand, receives tax benefits associated with a debt charge-off but

7

can still resume collection activities later. *Cashion*, 720 F.3d at 178 (describing the reasoning of the minority view). The minority view takes issue that creditors can deduct losses against tax liability at no risk, while debtors are left uncertain about tax obligations. *Id.*

Adding to the debate on debt liability emanating from Form 1099-C, the IRS allows creditors to send corrected Forms 1099-C. *See In re Zilka*, 407 B.R. 684, 689 (Bankr. W.D. Pa. 2009) ("That Forms 1099-C can be corrected would be impossible were it the case that the filing and issuance of a Form 1099-C constitutes an admission by the creditor that it has discharged the debt and can no longer pursue collection thereon."); *but see In re Reed*, 492 B.R. 261, 272 (Bankr. E.D. Tenn. 2013) (citing *Zilka*, 407 B.R. at 689) ("The court does not agree with the argument that because a Form 1099–C can be corrected . . . it cannot constitute an admission . . . that a debt has . . . been discharged or cancelled . . . ."). Even in the minority view, however, if a creditor sends a corrected Form 1099-C, the new form can rebut a presumption that the original Form 1099-C evidenced cancellation. *Wells Fargo Advisors, LLC v. Mercer*, 735 F. App'x 23, 25 (2d Cir. 2018). The corrected Form 1099-C rebuts such a presumption because the correction eliminates inequitable tax consequences. *Id.*

Lastly, the language in the preamble to the 2016 revision of 26 C.F.R. § 1.6050P–1, that all "identifiable events [in § 1.6050P-1(b)(2)] . . . typically result from an actual discharge of indebtedness," does not counteract the actual discharge distinction in the body of the regulation. Removal of the 36-month Non-Payment Testing Period Rule, 81 Fed. Reg. 78,908 (Nov. 10, 2016) (IRS Bulletin No. 2016-48) (explaining rationale behind eliminating code "H" Forms 1099-C). As the Third Circuit noted in a recent unpublished opinion, notwithstanding the preamble, the plain language of the regulation retains the original distinction between actual discharge and discharge generally. *Gericke v. Truist*, No. 21-1776, 2022 WL 2128561, at *3 (3d Cir. June 14, 2022). The

8

court in *Gericke* found Form 1099-C issued under code "G"—representing "a decision by the creditor . . . to discontinue collection activity and discharge debt"—did "not require cancellation or actual discharge of the underlying debt," regardless of the 2016 revision preamble. *Id.* at *3-*4; 26 C.F.R. § 1.6050P–1(b)(2)(i)(G).

Here, the question presented is whether Truist actually discharged Plaintiff's debt. Plaintiff relies solely on the allegation that Truist issued the 2020 Form 1099-C under code "G" to demonstrate an actual discharge occurred. Fourth Circuit precedent binds this Court in holding that Form 1099-C does not, on its own, evidence an actual discharge of debt. *Cashion*, 720 F.3d at 178-79. Nor is there any allegation of debtor tax liability, the primary concern of the minority of courts that have found otherwise. Plaintiff does not allege that he paid taxes for cancellation of indebtedness income. And even if the form created a presumption of discharge, Defendants issued Plaintiff a corrected Form 1099-C, eliminating the potential for inequitable tax circumstances and rebutting that presumption. *See Mercer*, 735 F. App'x at 25.

Despite revisions to 26 C.F.R. § 1.6050P–1, the plain language of the regulation still indicates that a discharge triggering a Form 1099-C reporting requirement does not equate to an actual discharge of debt. Thus, Truist's obligations around issuance of code "G" on Form 1099-C remain unchanged since the Fourth Circuit's decision in *Cashion*. Truist's issuance did not evidence cancellation of Plaintiff's debt.

## B. Breach of Contract

Plaintiff alleges Defendants breached a contract when Truist issued a corrected 2020 Form 1099-C that changed the amount of debt discharged from $536,743.62 to $0.00. Defendants argue they did not breach a contract because issuing Form 1099-C did not create a contractual relationship.

In Virginia, Plaintiff must establish "the existence of a legally enforceable agreement" to maintain "an action for breach of contract[.]" *Knox Energy, LLC v. Gasco Drilling, Inc.*, 738 F. App'x 122, 124 (4th Cir. 2018) (citing *Valjar, Inc. v. Maritime Terminals, Inc.*, 220 Va. 1015, 1017-18 (1980)). A valid contract in Virginia requires "an offer, acceptance, and consideration." *Neil v. Wells Fargo Bank, N.A.*, 596 F. App'x 194 (4th Cir. 2014) (citing *Chang v. First Colonial Sav. Bank*, 242 Va. 388 (1991)).

In ambiguous cases, an offer is present when "'the facts show that some performance was promised in positive terms in return for something requested.'" *Chang v. First Colonial Sav. Bank*, 242 Va. 388, 391 (1991) (quoting 1 Williston on Contracts § 27, p. 65 (3d ed. 1957)). For example, in *Chang*, a bank's advertisement for a TV and $20,136.12 to be delivered in the future for a bank deposit of $14,000 was an offer by the bank because performance (television and cash later) was promised in return for something requested ($14,000 deposit). *Id.* at 391-92.

Acceptance of an offer forms a contract when "the offeree communicates its acceptance to the offeror." *Power Servs., Inc. v. MCI Constructors, Inc.*, 3 F. App'x 190, 192 (4th Cir. 2001) (citing *Levy v. Beach Inv. Corp.*, 212 Va. 19, 19-20 (1971) (per curiam)). In *Levy*, the plaintiffs accepted an offer via telephone, but failed to deliver a signed contract. 212 Va. at 19-20. The Virginia Supreme Court found valid acceptance because the contract "became effective when its acceptance was communicated [via telephone.]" *Id.* at 20 (citing 1A A. Corbin on Contracts § 244 (1963)). Thus, communication of acceptance to the offeror establishes legal acceptance of the contract. *Id.*

Consideration is "'the price bargained for and paid for a promise' . . . [and] may be 'a benefit to the party promising or a detriment to the party to whom the promise is made.'" *Neil*, 596 F. App'x at 197 (quoting *Smith v. Mountjoy*, 280 Va. 46, 53 (2010)). In *Neil*, the plaintiffs

10

received a loan modification and, in return, offered such valid consideration as, *inter alia*, committing to credit counseling and waiving foreclosure notices.  *Id.*

Plaintiff alleges the first Form 1099-C formed a contract to cancel his debt.  In support of this argument, Plaintiff alleges (1) Truist issued the form with an indicated amount of $536,743.62, and (2) Plaintiff agreed with the amount.  Plaintiff does not state, but seems to suggest, that he impliedly agreed with the amount on the form by refraining from contacting Truist.  Construing all facts in the Complaint in Plaintiff's favor, Plaintiff fails to allege facts in support of offer, acceptance, or consideration.

Truist's issuance of Form 1099-C could not have been a contractual offer to discharge debt because Truist did not request anything in return.  In *Chang*, something as open-ended as an advertisement constituted a contractual offer, but only because it solicited offerees for something in return for what was advertised.  242 Va. at 391-92.  Here, Truist could not have made an offer to Plaintiff, because Truist asked for nothing in return for the discharge of debt.

Moreover, Plaintiff could not have accepted any alleged offer because Plaintiff never communicated acceptance to Defendants.  Plaintiff seems to suggest his silence effectively operated as agreement with the Form 1099-C.  But communication is key to establishing the mutual assent necessary to form a contract.  *Phillips v. Mazyck*, 273 Va. 630, 636 (2007) ("We ascertain whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind." (citing *Wells v. Weston*, 229 Va. 72, 78 (1985) and *Lucy v. Zehmer*, 196 Va. 493, 503 (1954))).  Without communication, offerors would have to guess whether offerees have accepted offers, which could cause innumerable issues.  *See, e.g.*, *Whalen v. Rutherford*, No. 3:12CV00032, 2013 WL 5532676, at **3-4 (W.D. Va. Oct. 4, 2013) (finding silence as to one proposed agreement was not acceptance, especially because this would defeat the

11

function of a second proposed agreement, sent by the offeree, as a counteroffer) (citing *Phillips*, 273 Va. at 636 (2007); *Moorman v. Blackstock, Inc.*, 276 Va. 64, 75 (2009); and *Virginia Farm Bureau Mut. Ins. Co. v. Hodges*, 238 Va. 692, 695 (1989)).[4]

Lastly, Form 1099-C did not form a contract between Plaintiff and Truist because Plaintiff did not provide any consideration in return for a discharge of debt. Instead, Plaintiff seeks to establish a contractual agreement from Truist's mere communication that his debt had been discharged. When viewed as a contract, Form 1099-C may be said to have imposed tax obligations on Plaintiff. But Plaintiff does not allege that he has incurred any tax liability. Plaintiff has not made any promises or acted to his own detriment in return for an actual discharge of debt. Thus, consideration is absent from the facts of this case.

While Plaintiff alleges the Form 1099-C Truist issued formed a contract, the fundamental elements of a contract are absent from Plaintiff's pleadings.[5] Thus, a contract for the actual discharge of Plaintiff's debt never existed and Plaintiff's breach of contract claim is dismissed.

---

[4] Plaintiff may be able to argue his emails requesting a status on the lien on his home communicated acceptance. However, Plaintiff does not make this assertion in his pleadings and, even if he did, Truist did not make an offer in the first place.

[5] When faced with the question of whether a Form 1099-C can be a contract, courts have generally declined to engage the question's substance, instead resolving the case on other grounds. *Slaughter v. United States*, 733 F. App'x 531, 534 (Fed. Cir. 2018) (breach of contract claim time-barred); *Muhammad v. O'Brien*, No. 1:20-CV-4802-MLB-JSA, 2021 WL 3417598 at *9 (N.D. Ga. Apr. 5, 2021), *report and recommendation adopted*, No. 1:20-CV-4802-MLB, 2021 WL 3464384, at *7 (N.D. Ga. Aug. 6, 2021) (name of creditor on Form 1099-C was not Defendant's name). According to the Eastern District of California, issuing a Form 1099-C could satisfy the statute of frauds and could serve as evidence of mutual assent between the parties. *Habtemariam v. Vida Cap. Grp., LLC*, No. 2:16-CV-01189-MCE-AC, 2021 WL 1966325, at **4-6 (E.D. Cal. May 17, 2021). But even in *Habtemariam* the plaintiff's allegations that survived summary judgment centered around a pre-existing contract—not one purported to have been formed by issuance of a Form 1099-C. Moreover, while the opinion in *Habtemariam* described one Plaintiff who adequately pleaded facts to support the claims, that is not the case here.

### C. Bad Faith

Plaintiff alleges Defendants engaged in bad faith practices. Plaintiff's Complaint notes "the implied covenant of good faith" before alleging "bad faith." Dkt. 1-1 at 8. Accordingly, this Court liberally construes the bad faith claim as a claim for the breach of implied covenant of good faith and fair dealing. Plaintiff's claim lacks merit because Form 1099-C was not a contract and no such implied covenant existed.

"In Virginia, the elements of a claim for breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto v. Space Adventures*, *Ltd.*, 624 F. Supp. 2d 443. 450 (E.D. Va. 2009) (citing *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 35 (1996)). Because no contractual relationship sprouted from the issuance of the Form 1099-C, Plaintiff cannot assert a claim of bad faith associated with Defendants' actions to correct the Form 1099-C. *See Peregrine Dev. Int'l, Inc. v. Pac. Architects & Eng'rs Inc.*, No. 1:09CV700, 2009 WL 10693622, at *1 (E.D. Va. Sept. 22, 2009) (citing *Frank Brunckhorst Co., LLC v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008)) ("a breach of [an implied covenant of good faith and fair dealing] only gives rise to a breach of contract claim, not a separate cause of action.").

Because Form 1099-C does not signify a contract, issuing a Form 1099-C did not create an implied covenant of good faith and fair dealing for Defendants to breach. Because no implied covenant existed, Plaintiff's implied-covenant claim fails.

### D. Fraud

Plaintiff alleges Defendants' representations of discharged debt on Form 1099-C amounted to fraud. Defendants argue Plaintiff does not plead facts to support intent to mislead and damage Plaintiff.

"Under Virginia law, a claim for fraud requires: '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, [and] (5) reliance by the party misled, . . . (6) resulting [in] damage to [that] party.'" *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 858-59 (E.D. Va. 2016), *aff'd sub nom. Hardnett v. M & T Bank*, 699 F. App'x 242 (4th Cir. 2017) (alterations and omissions in original) (quoting *Bennett v. Bank of Am., N.A.*, No. 3:12CV34-HEH, 2012 WL 1354546, at *6 (E.D. Va. Apr. 18, 2012)). Federal Rule of Civil Procedure 9(b) requires that Plaintiff plead fraud with particularity. Particularity means Plaintiff must detail "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)).

Plaintiff pleads facts around misrepresentation and reliance with particularity. Plaintiff alleges (1) Defendants misrepresented the amount of Plaintiff's debt that was discharged by issuing two identical Forms 1099-C with differing amounts, and (2) Plaintiff relied on this representation when he entered a contract to sell his home. Plaintiff's factual allegations in support of these elements are clear and meet the standard of particularity.

Notwithstanding having sufficiently pleaded allegations of misrepresentation and reliance, Plaintiff's fraud claim fails because he does not allege facts in support of Defendants' intent to mislead and any measurable damages resulting to Plaintiff.

*1. Intent to Mislead*

Plaintiff does not plead facts to support Defendants knew they misled or intended to mislead Plaintiff. "Although '[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally,' . . . [P]laintiff still 'must set forth specific facts that support an inference

14

of fraud.'" *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting Fed. R. Civ. P. 9(b) and *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003)).

In *McCune v. Xerox Corp.*, the defendants decided to terminate the plaintiff, but still represented they would continue to employ him. 225 F.3d 654, 2000 WL 1012962, at *3 (4th Cir. 2000). In the three months between the defendants' decision and their actual termination of the plaintiff, the defendants (1) made a $157,600.00 sale to a client who only committed to the sale based on the plaintiff's continued employment, and (2) obtained from the plaintiff compensation information of one of his employees they would later hire. *Id.* at **3-4. These facts illustrated both knowledge and intent to mislead because the court reasoned such facts gave the defendants a reason to make fraudulent representations. *Id.*

Here, Plaintiff describes the Defendants' behavior as an "intentional dishonest act" and claims Defendants, by issuing Form 1099-C, entered an agreement, the obligations of which they had "no intentions to fulfill[.]" Dkt. 1-1 at 8. Plaintiff does not, however, allege facts that demonstrate Defendants issued Form 1099-C with intent to defraud. The allegations do not suggest Defendants expected to reap benefits from misrepresenting the status of Plaintiff's debt. Plaintiff's only factual allegations of Defendants' behavior are that (1) Defendants mailed Plaintiff the first form in 2020, and (2) Defendants emailed Plaintiff and others in 2022 with corrections to the original form.

Particularity also requires Plaintiff to describe "what [Defendants] obtained" by way of misrepresentation. *Harrison*, 176 F.3d at 784. Plaintiff does not describe to the Court what benefit accrued to the Defendants as a result of their alleged misrepresentations. In his Complaint, Plaintiff repeatedly states that Defendants had "no intentions to fulfill" a promise to discharge

15

Plaintiff's debt. Dkt. 1-1 at 8. Until Plaintiff describes what benefit Defendants obtained—or even stood to gain—by misrepresenting the status of his debt, this Court considers Defendants' allegedly fraudulent intentions speculative at best.

### 2. Injury

Plaintiff also does not plead facts to demonstrate he incurred damages. Plaintiff alleges he should be compensated $640,000.00 because Truist's representations prevented him from selling his home for $640,000.00. The unrealized sale of Plaintiff's home, subject to a judgment lien, is not a cognizable injury.

First, discharge of *in personam* debt obligations does not relinquish the *in rem* judgement on Plaintiff's home. *Johnson v. Home State Bank*, 501 U.S. 78, 84-85 (1991). Therefore, even if Plaintiff believed the Form 1099-C cancelled his debt, such cancellation would not impact the judgment lien that encumbered Plaintiff's home. Some courts have held that an *in rem* obligation ceases to exist when the debt it secures is paid or discharged in full. *See, e.g.*, *In re Lukaszka*, No. BR 17-00242, 2017 WL 3381815, at *4 (Bankr. N.D. Iowa Aug. 4, 20f17) ("[A] lien . . . survives until the debt [is] paid or discharged." (quoting *Clinton Cty. v. Cox*, 37 Iowa 570, 571 (1873))). However, Plaintiff's Complaint indicates there is still a "remaining debt" that he owes to Truist, which defeats such a line of reasoning. Dkt. 1-1 ¶ 8.

Second, even if Plaintiff enjoyed a legal right to sell his home free of encumbrances, injury from an unrealized sale would not be the full sale price, but the difference between the sale price and fair market value. *See, e.g.*, *Sharma v. USA Int'l, LLC*, 851 F.3d 308, 312 (4th Cir. 2017) ("[T]he proper measure of damages is 'the difference between the *actual value* of the property at the time the contract was made and' . . . the *bargained-for value*." (quoting *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 91 (1999) (citations omitted) (emphases in original))). Such an evaluation

is appropriate because Plaintiff still possesses his home, *i.e.*, the $640,000.00 asset he wished to sell.  As far as the pleadings indicate, Plaintiff never sold his home and Defendants never took possession of his home.  Allowing Plaintiff to recover $640,000.00 from Defendants would constitute double recovery: Plaintiff would be blessed with the full sale price and still retain possession of his home.  At most, Plaintiff would be entitled to the difference between $640,000.00 and the actual value of his home—in the event the value dipped below $640,000.00—an amount Plaintiff does not articulate as damages.  Moreover, Plaintiff's Complaint does not even suggest to the Court that there is a difference in the actual value of his home and the bargained for value.  Plaintiff must allege such a difference in value to have properly pleaded injury.

Third, Plaintiff does not allege inequitable tax liability—the typical damage claimed as a result of misrepresentations on Form 1099-C.  *Mercer*, 735 F. App'x at 25.

Without sufficiently specific and plausible allegations of intent to defraud or damages, the Complaint does not state a claim for fraud based on the lawful issuing and correction of a tax form.  Thus, Plaintiff's fraud claim is dismissed.

### E.  Claims against Cogan

Defendants move to dismiss claims against Cogan with prejudice because Plaintiff's Complaint only implicates Cogan in its capacity as legal counsel for Truist.  To support their argument, Defendants cite a case that bars the use of litigation documents as a basis for litigation against the drafting attorneys.  *Spencer v. Am. Int'l Grp., Inc.*, No. CIV. 3:08CV00591, 2009 WL 47111, at *4 (E.D. Va. Jan. 6, 2009) ("[A]llegations in the . . . Complaint[]cannot . . . be a basis for a defamation claim because [it is] protected by the litigation privilege").  Defendants also urge the Court to dismiss any potential abuse of process claims that may be construed from Plaintiff's pleadings.

Advancing a theory of "litigation privilege" in the present context is misguided as an affirmative defense. The Complaint does not target Cogan for alleged conduct constituting a "communication made in a proceeding pending in a court." *Spencer*, 2009 WL 47111, at *4. Nor do Defendants seek to prevent the discovery of certain pre-litigation communications at this early stage of litigation. And even if that privilege were relevant to Plaintiff's claim, the Supreme Court of Virginia has recently held that "[a]bsolute privilege does not apply to non-defamation torts in Virginia, specifically including . . . tortious interference with contractual relations." *Givago Growth, LLC v. Itech AG, LLC*, 300 Va. 260, 266-67 (2021).

Here, the relevant legal question is whether a third-party may sue a law firm acting on behalf of its client. In the absence of Virginia caselaw directly addressing the issue, this Court finds Texas caselaw persuasive. In Texas, attorney "conduct [that is] part of discharging duties" to represent a client is not actionable by a third party because "such liability would threaten zealous representation[.]" *Smith v. Bank of Am. Corp.*, No. A-13-CV-193 LY, 2013 WL 12033215, at *4 (W.D. Tex. May 1, 2013), *report and recommendation adopted*, No. A-13-CV-193-LY, 2013 WL 12033379 (W.D. Tex. Aug. 5, 2013) (citing *Chapman Children's Tr. v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 441 (Tex. App. 2000) and *Rawhide Mesa-Partners, Ltd. v. Brown McCarroll, L.L.P.*, 344 S.W.3d 56, 62 (Tex. App. 2011)). "If an attorney could be held liable to an opposing party for . . . actions taken [while] representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest." *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App. 2005) (citing *Bradt v. West*, 892 S.W.2d 56, 71-72 (Tex. App. 1994), *writ denied* (Mar. 30, 1995)). Here, holding Cogan liable for its client's actions could overly burden law firms zealously defending their clients' legal entitlements.

This Court agrees that Cogan must be dismissed from this matter because "Cogan did not issue a Form 1099-C, is not a creditor that has any obligations to the IRS regarding issuance of the Form 1099-C, and is not Plaintiff's judgment creditor." Dkt 5-1 at 19. Because Cogan's actions and communications with Plaintiff were only conducted in its capacity as Truist's legal counsel, "Cogan is needlessly included as a defendant." Dkt. 5-1 at 19. Cogan's alleged conduct forms no independent basis for any of the legal claims advanced by Plaintiff in the Complaint.

Accordingly, Plaintiff's claims against Cogan are dismissed. If Plaintiff has other claims against Cogan in a personal capacity unrelated to his representation of Defendants as legal counsel, he may bring them in an amended complaint.

## IV.  CONCLUSION

Accordingly, Defendants' Motion to Dismiss (Dkt. 5) is GRANTED, and Plaintiff's Complaint is DISMISSED without prejudice on all counts; and it is

FURTHER ORDERED that if Plaintiff seeks to amend the Complaint (Dkt. 1-1) with respect to any of the dismissed claims, Plaintiff must file a Motion to Amend, with an attached proposed Amended Complaint providing a chronological, plain statement of the facts in compliance with Federal Rules of Civil Procedure 8 and 9, within twenty-one (21) days of the entry of this Memorandum Opinion and Order.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order.  A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals.  Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward a copy of this Order to Plaintiff's mailing address and to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
December 5, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge